Thank you, Your Honor. May it please the Court. In Mary Vetor's opening brief, we raised four issues. Today, I would like to focus on issue number two. The trial court deprived Ms. Vetor of her constitutional right to present evidence of gross medical negligence in defense of the trial. The state and defense experts agreed that brain swelling must be treated immediately with surgical intervention. The only dispute was whether Joshua Turdick's initial CT scan revealed evidence of brain swelling. Testifying for the state, Dr. Jackson said no. In an offer of proof of defense, which the jury never heard, Dr. Swan said yes. So the case boils down to this. It was the jury's role to decide whether Dr. Jackson or Dr. Swan was correct, but the trial court usurped that role when it barred Dr. Swan from testifying. If the jury had heard Dr. Swan's testimony, it may well have found that the 16-hour delay in treating Mr. Turdick, which more than quadrupled his chance of death, was gross medical negligence based on the misreading of his initial CT scan. Now, Dr. Swan's testimony would have established a factual basis for defense of gross medical negligence. As Dr. Swan opined, Mr. Turdick initially presented with brain swelling that was not likely to be fatal if it had received prompt and proper treatment, and the evidence indicated that the odds, in fact, were overwhelmingly in favor of Mr. Turdick surviving his injury. Dr. Swan testified that based on the clinical assessment performed by Dr. Jackson, which he reviewed, Mr. Turdick's chances of survival were 95%. However, Dr. Swan would have testified that that 5% mortality rate, 5% chance of death, more than quadrupled to 21% when Mr. Turdick was not treated promptly with surgical intervention. Now, it's important to recognize here that Dr. Swan's testimony was essential for a very specific purpose in this case, and it was not to establish the standard of care, to establish what kind of treatment brain swellings such as Mr. Turdick's require. That much, again, was not in dispute and could have been established entirely from Dr. Jackson's own testimony. Dr. Swan's testimony, rather, was necessary to dispute Dr. Jackson's testimony that Mr. Turdick did not present brain swelling. Now, that factual dispute, did Mr. Turdick present initially with brain swelling or not, was a question that the jury should have been allowed to resolve. That dispute went directly to the question of whether there was gross medical negligence in this case, and that, of course, is a quintessential jury issue. It also called for a credibility determination. This factual dispute would have been resolved primarily by the jury deliberating as to whether or not it found Dr. Jackson or Dr. Swan the more credible witness based on their experience and whatever reasons for their opinions they were able to marshal during their testimony. But that didn't happen in this case. Rather, the factual dispute that formed the basis of Ms. Beater's defense to the charge of first-degree murder was never put before the jury, and the jury only heard the state's side of the story, which was Dr. Jackson's testimony that Mr. Turdick did not present with brain swelling, and so there was no need for surgical intervention until substantially later. Now, if the jury believed Dr. Swan, and that is entirely within the jury's province, whether to believe Dr. Swan or Dr. Jackson, it therefore could have found gross negligence, and it could have found that Ms. Beater had a viable and valid defense to the charge of first-degree murder. And that, again, is because Mr. Turdick presented with an injury that, although a severe injury to be sure, was one that was not at all likely to be life-threatening if it had been properly treated. Instead of letting the jury resolve this factual dispute for itself, however, the trial court barred Dr. Swan's testimony, and it did that for two reasons, neither of which is correct. First, the court said that Dr. Swan could not testify because he was not a neurosurgeon, whereas Dr. Jackson was a neurosurgeon, and so for that reason, the trial court believed that Dr. Swan was not capable of establishing the relevant standard of care. However, the standard of care, as I said before, was not the issue in this case, and it was not the issue that Dr. Swan's testimony was necessary to establish. Again, Dr. Swan's testimony was necessary to dispute Dr. Jackson's testimony that there was no brain swelling present until approximately 16 hours after Mr. Turdick arrived at the hospital. So that was not a reason at all to bar Dr. Swan from testifying. And in fact, during the in-camera hearing in the trial court, during the offer of proof, the state conceded that the fact that Dr. Swan was not a neurosurgeon was not a legitimate reason to bar him from testifying. Second, the court also thought that Dr. Swan's offer of proof failed to establish that the standard of care at the time of Mr. Turdick's injury was that surgical intervention would have been required. Again, I think in this respect, the trial court didn't quite see the critical issue with respect to Dr. Swan, which again was not the standard of care, which was never in dispute, and which could have been established from Dr. Jackson's testimony, but rather the issue, the factual issue, the factual dispute of whether that swelling was indeed present. And so for that reason, the trial court was in error when it barred Dr. Swan from testifying. What do you think is the critical statement Dr. Swan makes that you think should have been allowed into evidence as expert testimony? Is that that would indicate that the victim would have a better outcome if surgery had been performed sooner? Well that, but most importantly, his statement that based upon his review of the hospital records, including the CT scan performed when Mr. Turdick was initially admitted, that sprain swelling was present and evident from that CT scan, which is something that Dr. Jackson specifically denied. And that was the critical testimony. And why is that the critical testimony in your mind? Because Dr. Jackson in his own testimony admitted that when brain swelling is appreciated, it is important that it receive prompt treatment, and that the standard, the typical treatment when brain swelling is recognized is to perform a surgical intervention called a decompression or a craniotomy. So that much was not in dispute. But Dr. Jackson said, well, we didn't do that immediately, as Dr. Swan said should have been done, because there wasn't any brain swelling on the initial CT scan. And so that factual dispute, if the jury had sided with Dr. Swan on that, well, then they would have had a basis for inferring from Dr. Jackson's own admissions that surgery should have been performed promptly. But isn't it critical that you had to have a qualified expert to testify that surgery would have made the difference? Could Dr. Swan testify to that? Well, he did testify to that. He said that. Could he testify to that? Was he qualified to testify to that? He was – I do believe Dr. Swan was qualified to render an opinion that prompt treatment of an injury like this that he's familiar with would have substantially improved his chances. Now, the jury may well have thought that Dr. Jackson as a neurosurgeon was a more credible witness on that matter. We don't know. And that was the jury's – Dr. Swan is not a neurosurgeon. Dr. Swan isn't that type of doctor. Isn't that right? It's right that he's not a neurosurgeon, but again – So can he render an opinion to a reasonable degree of medical certainty to the issue that you think should have been addressed? Well, the issue that I think should have been addressed, Your Honor, I believe can be established from Dr. Jackson's own testimony. Dr. Jackson said that it is critical that brain swelling be treated with prompt surgical intervention. So Dr. Swan's testimony in that regard really wasn't critical. What was critical was the underlying factual dispute as to whether the symptom or the physiological state that would trigger that need for surgery was evident when Mr. Turdick first presented to the hospital. And Dr. Swan's not a radiologist. No, but he's an emergency room doctor. And ER doctors routinely use CT scans as one of their tools when they initially assess trauma patients and determine whether a consult with a neurosurgeon is called for. And so with respect to that issue of interpreting the CT scan, you know, as an ER physician with over 30 years of experience, I don't think there's any question that Dr. Swan was amply qualified to testify to that. Well, if the Court has no further questions, then I would conclude by saying that there was a very specific and well-defined factual dispute in this case between the two experts that should have been presented to the jury. But that fact-finding role of the jury was usurped when the trial court barred Dr. Swan from testifying to an issue that he was entirely competent to testify to. That error deprived Ms. Veeder of a viable defense for the charge of first-degree murder. And as a result, she is currently serving a lengthy prison sentence for that charge without having been afforded a meaningful opportunity to present a complete defense. And the offer of proof for Dr. Swan, Dr. Swan never testified to a reasonable degree of medical certainty that gross negligence of practice. Dr. Swan testified that the outcome for Mr. Turdick would have been better had surgery been performed at the appropriate time, by which I think that can only mean Mr. Turdick likely would have survived. Whether that rises to the level of gross medical negligence or not, we would submit is a factual question for the jury to resolve. Well, those kinds of factual questions you need expert testimony on, and Dr. Swan was not offered to render that. Well, Dr. Swan was offered to render testimony on two things. One, again, the dispute about the initial CT scan, and two, he testified as well that there would have been a, there was a substantial decrease in Mr. Turdick's chance of survival because the appropriate treatment was not rendered immediately. Now, again, I don't think that Dr. Swan's testimony was even really essential on that second part because it follows from what Dr. Jackson himself testified, that it was critical to perform surgical decompression of the brain as soon as the presence of that swelling was recognized. And so while, you know, it's of course true that it's the defendant's burden to show that there's gross medical negligence, there's no reason the defendant can't do that by relying on statements made by the State's own expert if that conclusion is a reasonable inference from what the State's expert has testified to, and I think that is the case here. The only missing piece of the puzzle that the jury would have needed to draw that inference is the question of whether that swelling was initially present and should have been initially recognized based on the CT scan. Do you have more to present? If there are no more questions from the court, I would reserve my time for rebuttal. You'll have five minutes. Thank you very much, Mr. Berger. Mr. Leonard? May it please the court, counsel, first of all, I'd like to look at the big picture of why Joshua Turdick was in the hospital. Ms. Veder had participated in a plan to rob Mr. Turdick, and she provided a ride in the handgun, which was used to shoot Mr. Turdick in the head at point blank range. The presumption is somebody shoots somebody else in the head, the cause of death was the gunshot wound to the head, and it creates a rebuttal presumption for the defendant to show that the sole cause of death was not the gunshot wound to the head, but that gross negligence or intentional medical maltreatment was the sole cause of the death. Now here the standard of review is abuse of discretion because it's an evidentiary issue. With regard to Justice Carter's questions, of course, Dr. Schwandt was not a neurosurgeon, he was an emergency room medical specialist. Mr. Schwandt testified that he treated 10 gunshot wounds, but what he did was stabilize these patients, and then he would refer these patients to the neurosurgeon. He testified that none of the patients he treated had any great outcome, wasn't a good outcome. Of course, he was not qualified to give an expert opinion on neurosurgery when he was only an emergency room medical specialist. I guess from his response to some of my questions, first off, there's no debate in this case that there's no argument about intentional medical maltreatment, is there? No. Okay, so the question that the defense is raising is whether or not they were prevented from attempting to establish gross negligence. Yes. And if gross negligence is a defense, would they need to have an expert to render a medical opinion that this was medical malpractice, gross negligence? Yes, they would have to have a doctor who specializes in neurosurgery render opinion that this was gross negligence and the sole cause of Mr. Turing's death. Now, if I, and he can correct me if I'm wrong when he comes back up, but if I understand him correctly, he's indicating, well, all he had to do was testify to Dr. Swan. All Dr. Swan had to do was testify that brain swelling existed in the files and he was qualified to indicate what he saw in the records. Yes. And then if you take that piece of evidence and combine it with the prosecution witness who said that if swelling's there, you need to do surgery immediately. When he said that, did that establish, when the doctor said that and he combined those two facts, did that establish a medical opinion with regard to a reasonable degree of medical certainty that that was gross negligence? No, for two reasons. First, the doctor was not qualified, he was not a radiologist, even though he's an emergency room doctor and perhaps relies on CT scans. Well, I'm not asking that question. I'm asking if he's qualified to render an opinion that there was brain swelling initially. Right. And if he just testified to that, because if you combine that with Dr. Jackson, Dr. Jackson's testimony that if there was brain swelling, then you need to do surgery right away. No. Is that a statement from Dr. Jackson? You think Dr. Jackson's qualified to testify, right? Yes. Did Dr. Jackson testify to enough to establish gross negligence then if that other circumstance existed? No, because Dr. Jackson testified that he waited to do surgery because he saw no swelling in the CT scan and that the patient was responsive and doing fairly well and was cognitive in answering questions. Only after the several hours passed did his condition become worse and at that time Dr. Jackson did a CT scan and found swelling on the second CT scan. The first CT scan he found no swelling. The patient was functioning, doing fairly well, and that was another reason why he did not do surgery right away. Now Dr. Schwann admitted at that time that there was no medical consensus about surgery and gunshot wounds to the brain. There's never a good outcome usually when there's a gunshot wound to the brain. You would agree that if there was enough for Dr. Schwann to have some evidence in the case, I mean you make the argument, it appears on page 24 of your brief, that you don't mention the rule of evidence number, but it's a 403 objection that if something is otherwise admissible it should be kept out because it's so highly prejudicial. But if this was relevant, competent, expert testimony, there would hardly be a 403 kind of objection would there be? There would not be, but he was not competent to render this decision that there was brain swelling. We have a qualified neurosurgeon testifying that there was not brain swelling at this point and that the patient was doing well. So you can't just rely on what Dr. Schwann is saying. He's just saying there's brain swelling, we have to do surgery right away. But then Dr. Schwann admitted that there was no consensus at that time whether to do surgery at that time immediately or not. To this day I still don't know whether what the medical consensus is, but that cannot rise to the level of gross negligence if there was no consensus in the medical community whether to do surgery right away or not. Dr. Jackson believed that if there was surgery, if there was swelling, he would have done the surgery. But the patient was doing well, no swelling that he saw, and just because Dr. Schwann testified that he saw some swelling in the CT scan does not mean that he was able to give a competent opinion to establish anything close to gross negligence. Well, from your argument, you're arguing then that when he testified that there's still controversy in the trauma care. How can it be gross negligence if there's no consensus in the medical community that it's malpractice or gross negligence to do or not to do surgery immediately when there is swelling shown, even though a patient may be doing well and cognitive until that swelling becomes such a problem that it causes more damage than without having the surgery done. Of course, when you do surgery, there's also risk, which may create more swelling. That's why they give the drug Manitoulin and other things, isn't it? Yes. A gauge. Yes. Surgery would be a last resort. And you just can't look at the one statement that Dr. Schwann makes, is, I saw swelling on the CT scan, you should have done the surgery right away. He would have had such statistical chances of living or having more improvement, but he doesn't say where he got his numbers from. The trial judge is the gatekeeper of the evidence here, and he properly kept that testimony out. And I don't think you can say that the trial judge abused his discretion based on all of the evidence, not just one single statement by Dr. Schwann. I rely on my brief for the other issues. If you don't have any questions, I ask that you affirm the defendant's conviction and sentence. Thank you, Mr. Leierd. Mr. Berger? Thank you, Your Honor. Let me begin by first addressing the standard of review in this case, which, as the Court knows, was disputed between the parties in the briefs. The State has claimed that the correct standard here is abuse of discretion. And in its brief, the State explains that this is essentially because of the doctrine of constitutional avoidance. I don't believe that that doctrine properly applies in this case. As our Supreme Court has routinely repeatedly explained, when a defendant challenges a statute as unconstitutional, and there is a non-constitutional basis for providing relief, then there is no reason for a court to dispense the strong medicine of striking down a statute as unconstitutional. But that's not the situation here. Here we have a defendant who has claimed that her constitutional right to present a defense was precluded by the trial court's actions. And as we pointed out in the brief, that kind of an issue generally is reviewed de novo. Well, let's step back for a second. With the issue you're addressing right now, that's an evidentiary issue. It's whether or not a person should have been allowed to testify as an expert witness in this case. But the effect of the trial court's decision here was to entirely preclude the defendant's ability to present a defense to the charge of first-degree murder. Well, that's because the witness was kept from testifying. But the question is, isn't it, that whether or not they had a right to have this person testify? And it's an evidentiary question on admissibility of the evidence and whether or not under the 700 series in Wilson v. Clark, whether or not this expert was qualified to testify to these matters in this trial. And isn't that an abuse of discretion on an evidentiary matter? Well, I do think the ultimate issue does call for de novo review. But even if on this narrow question the court were to think, okay, this is an abuse of discretion because it pertains to the- Because you're complaining about one expert not being able to testify. Right. Even still, though, given the particular need for Dr. Swan's testimony, what he needed to testify to in order to establish the factual basis for Ms. Vietor's defense of gross medical negligence, the trial court really had no reason to exclude Dr. Swan with respect to that testimony. And the trial court's reasons for excluding him do show an abuse of discretion because I think the trial court misunderstood what was essential about Dr. Swan's testimony. And again, defense counsel during the offer of proof pointed out a number of times to the trial court that it wasn't just- But in particular, it was the question of whether Dr. Jackson was correct that there was no swelling evident on the initial CT scan. And the state conceded that the fact that Dr. Swan was not a neurosurgeon didn't make him incompetent to testify with respect to that particular critical issue in this case. And so- Was there any testimony that whether or not there was brain swelling that was crucial? Was there any testimony that that was gross medical negligence? Well, Dr. Swan didn't testify, so there was certainly not- No, but Dr. Swan in the offer of proof didn't say about gross medical negligence. No, he didn't use the phrase gross medical negligence. I mean, isn't that the issue in the case? I don't think so, Your Honor. I think if Dr. Swan testified that by Dr. Jackson's own medical judgment, surgery would have been required if the CT scan had been read correctly, and the failure to do so more than quadrupled Mr. Turdick's chance of dying- See, that's the step I'm wondering, does that exist in this case? Because in this case, you have Dr. Jackson making that statement, but Dr. Jackson never opines that not doing the surgery is gross medical negligence. And Dr. Swan never testifies that, assuming he was qualified, he never testifies in the offer of proof that there was gross medical negligence. And so the question isn't left for the jury in this kind of issue when you need expert testimony. You're not left to let the jury speculate or decide this based on conjecture. You've got to have expert testimony presented to say that this was gross medical negligence. And I'm asking, where is that in the offer of proof, or where is that- I know what you're saying about Jackson's previous testimony that surgery would have been required, but that is a different statement than saying it's gross medical negligence. Then the jury would have to speculate that his testimony, of course he's saying that there wasn't any brain swelling, but the jury would have to say, well, if we have this, we have that, the conclusion, gross medical negligence. But you need expert testimony to make that step from one to two. Well, I suppose that's where we would disagree, Your Honor, that what you would need expert testimony for is to give the jury the basis for making the inference that something was gross medical negligence. Well, you need a medical expert to testify what is or is not gross medical negligence. That's sort of an essential aspect. Well, we again would disagree to this extent, that what's essential is not that you have a doctor use the phrase gross medical negligence, but that you have a doctor who's competent to testify to a set of facts that if the jury believed would make it evident to them that there was gross medical negligence in this case. I don't believe that you need an expert to specifically say this was negligence and it was gross negligence. Well, if your position is accurate, many people in medical malpractice cases, the plaintiffs would find it very intriguing because they have a burden to show medical negligence and they have a burden to show to a reasonable degree of medical certainty there was medical negligence. And you can't leave it to the fact finder just to infer from step one to step two. This is the same, you know, because the question is you need expert testimony to establish that. A layperson can't establish that. So you need the expert testimony to establish it. And so is there a need to reach that opinion? Can you get so close to it but never get to the end? That's what I'm saying. I certainly agree you need to give the jury enough where they're within striking distance. I don't think that you need a doctor to use the phrase gross medical negligence in this. So can a lay fact finder and a jury say, well, if you have that, that's to a reasonable degree of medical certainty gross medical negligence? Can they make that statement? Yes. I mean, on the facts of this case, I think they can because the testimony was that the failure to perform the required medical treatment in a timely fashion more than quadrupled the patient's risk of death. And I think when you have testimony like that, that would be sufficient. I mean, if the testimony were, you know, at some point the testimony becomes too wishy-washy and all the expert says is, you know, I disagree. I think it would have been a good idea. At some point it's not going to be enough. That's certainly correct. But when the expert says, well, the failure to do what the doctor himself says should have been done increased the risk of death by a factor of more than four, I do think under those circumstances the jury could make that inference that it was gross medical negligence without an expert encanting those words per se. Is there a role for jury instructions here? Pardon? Is there a role for jury instructions here? There would have been if Dr. Swan had testified, and it would have been essential if the jury was instructed on the law that pertains to Ms. Beder's defense. But that defense wasn't before the jury in this case, and so there was no occasion to provide the instruction. But in terms of Justice Berger's question, if the jury was instructed on what could constitute gross medical negligence, is it enough to have the evidence of what was shown by the X-ray or the CT scan before the jury? Would they then be able to determine whether or not this was gross medical negligence? I think they would. But if that evidence had been before the jury, if Dr. Swan had been allowed to testify to his interpretation of that CT scan and that factual dispute had been put before the jury, and the jury had been instructed on gross medical negligence, then it would have been a question for the jury whether they found that standard to be satisfied. I think it's also useful to keep in mind that much of the questions that I think are probably driving the Court's inquiry here are matters that would have been more fully developed had Dr. Swan been allowed to testify, because he would have been subjected to cross-examination. Dr. Jackson certainly would have been called in rebuttal where these matters could have been explored in more detail. But none of that was all short-circuited by the exclusion of Dr. Swan. So at this point, the only way to understand more fully what was Dr. Jackson's thought process and to explore more fully whether Dr. Swan would have been willing to render a precise opinion as to whether this was gross medical negligence, he would have been asked that question on the stand. Isn't that the burden of the defense to show that this expert's qualified to render an opinion on something relevant to the case? I don't think it's the defense's burden necessarily to use that phrase, but to the extent that the Court was hoping to hear an expert say specifically it was gross medical negligence, he would have had an opportunity to do that. He wasn't asked, as far as I recall, specifically whether it was gross medical negligence. He was asked, what would the outcome have been? Would it have been different? And he said, the patient would have lived. And that, again, we would submit is sufficient for a jury to infer that it was gross medical negligence. And all of the issues that, factual issues that surround that termination would have been explored in more detail. Thank you. Thank you, Mr. Berger, and thank you both for your arguments today. We will take this matter under advisement. We thank you with a written disposition within a short time. We'll now take a short recess.